**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| PERNIX IRELAND PAIN DAC and | ) | |
| PERNIX THERAPEUTICS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 16-139-WCB |
| v. | ) | |
| | ) | Redacted Public Version Filed: 4/13/2018 |
| ALVOGEN MALTA OPERATIONS LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY**
**<u>JUDGMENT OF INVALIDITY BY ANTICIPATION</u>**

## **Table of Contents**

Table of Authorities .............................................................................................. iii

I.      Nature and Stage of Proceedings ................................................................ 1

II.     Summary of Argument ................................................................................. 1

III.    Facts ............................................................................................................. 3

IV.     Argument ...................................................................................................... 6

        A.      Legal Standard ................................................................................... 6

                1.      Anticipation ............................................................................. 6

                2.      Summary Judgment ................................................................. 7

        B.      Alvogen attempts to re-litigate issues that the Court already
                resolved. ............................................................................................. 7

        C.      One skilled in the art would not understand or infer that Devane's
                and Huang's methods of treating pain encompassed hepatically
                impaired patients. .............................................................................. 9

                1.      Hepatically impaired patients were not a "subpopulation"
                        but rather a different group distinct from the healthy patient
                        populations treated with hydrocodone in Devane and
                        Huang. ..................................................................................... 9

                2.      Devane and Huang do not anticipate the asserted claims
                        even if hepatically impaired patients were a subpopulation
                        of the pain patients treated with hydrocodone in Devane
                        and Huang. ............................................................................. 12

                3.      Alvogen cannot cherry-pick extrinsic evidence to plug
                        holes in its inherency theory while ignoring that the state of
                        the art as a whole undermines that theory ........................... 15

        D.      Alvogen mischaracterizes the law on inherent anticipation. ........... 18

                1.      Neither the district court nor the Federal Circuit held any
                        claims invalid in *Aventis*. .................................................... 18

                2.      The patents-in-suit claim a *new method of using*
                        hydrocodone—not the recognition of a new result or
                        property inherently flowing from an old use, as in
                        Alvogen's authority. .............................................................. 22

i

E.     Alvogen's irreconcilable arguments and expert testimony preclude
       summary judgment in Alvogen's favor. ..............................................24

       1.     Alvogen's expert used the wrong claim construction. .............................24

       2.     Alvogen argued in a co-pending litigation that ██████████
              ████████████████████████████████. .....................25

       3.     FDA guidance is irrelevant and, in any event, the dosing
              limitations do not inevitably result from PK data. .....................................26

F.     Huang is not prior art. ............................................................................27

V.     Conclusion ..................................................................................................28

## Table of Authorities

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
 544 F.3d 1341 (Fed. Cir. 2008) ................................................................. 6, 25

*Abbott Labs. v. Sandoz, Inc.*,
 566 F.3d 1282 (Fed Cir. 2009) ……………………...…………………………………15

*Allergan, Inc. v. Apotex Inc.*,
 754 F.3d 952 (Fed. Cir. 2014) ................................................................. 18, 25

*Allergan, Inc. v. Sandoz, Inc.*,
 726 F.3d 1286 Fed. Cir. 2013) ................................................................. 26, 28

*Anderson Corp v. Fiber Composites, LLC,*
 474 F.3d 1361 (Fed. Cir. 2007) ................................................................. 7

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) …………………………………………7, 27

*Atlas Powder Co. v. Ireco, Inc.*,
 190 F.3d 1342 (Fed. Cir. 1999) ................................................................. 19, 22

*Atofina v. Great Lakes Chem. Corp.*,
 441 F.3d 991 (Fed. Cir. 2006) ................................................................. 12, 20

*In re Petering*,
 301 F.2d 676 (C.C.P.A. 1976) ................................................................. 15

*Aventis Pharm., Inc. v. Impax Labs., Inc.*, No. 02-1322 (GEB), 2011 U.S. Dist. LEXIS
 3824 (D.N.J. Jan. 13, 2011), *rev'd*, 715 F.3d 1363 (Fed. Cir. 2013) ................................ 18

*Aventis Pharms., Inc. v. Barr Labs., Inc.*,
 411 F. Supp. 2d 490 (D.N.J. 2006), *aff'd* 208 F. App'x 842 (Fed. Cir. 2006) .......... passim

*Biacore v. Thermo Bioanalysis Corp.*,
 79 F. Supp. 2d 422 (D. Del. 1999) ................................................................. 15, 17

*Bondyopadhyay v. United States,*
 No. 14-147C, 2018 U.S. Claims LEXIS 79 (Fed. Cl. Feb. 9, 2018) ................................ 8

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
 246 F.3d 1368 (Fed. Cir. 2001) ................................................................. 1, 27

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
 948 F.2d 1264 (Fed. Cir. 1991) ................................................................. passim

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
    868 F.2d 1251 (Fed. Cir. 1989)................................................................. 13

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002)................................................................. 19

*Dayco Prods. v. Total Containment, Inc.*,
    329 F.3d 1358 (Fed. Cir. 2003)........................................................... 14, 17

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
    836 F.2d 1320 (Fed. Cir. 1986)................................................................... 8

*Dynamic Drinkware v. National Graphics*,
    800 F.3d 1375 (Fed. Cir. 2015)................................................................. 27

*Ecolochem, Inc. v. So. Cal. Ed. Co.*,
    227 F.3d 1361 (Fed. Cir. 2000)................................................................. 12

*Eibel Process Co. v. Minn. & Ont. Paper Co.*,
    261 U.S. 45 (1923)..................................................................................... 19

*Eli Lilly & Co. v. Teva Pharms., USA, Inc.*,
    2004 WL 1724632, at *27 (S.D. Ind. July 29, 2004).................................. 11

*Eli Lilly & Co. v. Teva Pharms., USA, Inc.*,
    2004 U.S. Dist. LEXIS 14724 (S.D. Ind. July 29, 2004), *aff'd*, 2005 U.S. App.
    LEXIS 14583 (Fed. Cir. July 13, 2005)............................................. 6, 23, 28

*Estee Lauder, Inc. v. L'Oreal, S.A.*,
    129 F.3d 588 (Fed. Cir. 1997)................................................................... 28

*Glaxo Group Ltd. v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004)............................................................. 6, 12

*Glaxo Inc. v. Novopharm Ltd.*,
    52 F.3d 1043 (Fed. Cir. 1995).......................................................... passim

*Glaxo, Inc. v. Novopharm Ltd.*,
    830 F. Supp. 871 (E.D.N.C. 1993)................................................... passim

*Glaxosmithkline LLC v. Teva Pharms. USA, Inc.*,
    No. 14-878-LPS-CJB, Order (D. Del. June 10, 2017 ................................... 7

*In re Baxter Travenol Labs.*,
    952 F.2d 388 (Fed. Cir. 1991)................................................................... 15

*In re Cruciferous Sprout Litig.*,
    301 F.3d 1343 (Fed. Cir. 2002)................................................................. 22

*In re Meyer*,
    599 F.2d 1026 (C.C.P.A. 1979) ................................................................... 13

*In re Petering*,
    301 F.2d 676 (C.C.P.A. 1976)………...........……………………………………13

*In re Robertson*,
    169 F.3d 743 (Fed. Cir. 1999).................................................................... 14

*In re Seaborg*,
    328 F.2d 996 (Cust. & Pat. App. 1964) ...................................................... 19

*In re Spada*,
    911 F.2d 705 (Fed. Cir. 1990)..................................................................... 22

*Koios Pharms. LLC v. medac Ges. für kiln. Spez. mbH*,
    No. IPR2016-01370, Paper No. 54 (P.T.A.B. Feb. 7, 2018) ............................... 12, 17, 23

*Mehl/Bio. Int'l Corp. v. Milgraum M.D.*,
    192 F.3d 1362 (Fed. Cir. 1999)................................................................. 6, 14

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)..................................................................................... 6

*Net MoneyIn, Inc. v. Verisign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008)................................................................... 7

*Perricone v. Medicis Pharm. Corp.*,
    423 F.3d 1368 (Fed. Cir. 2005)............................................................ 5, 22, 23

*Pfaff v. Wells Elecs.*,
    525 U.S. 55 (1998)..................................................................................... 6

*Rapoport v. Dement*,
    254 F.3d 1053 (Fed. Cir. 2001)............................................................ 6, 7, 18

*Sanofi-Synth. v. Apotex, Inc.*,
    550 F.3d 1075 (Fed. Cir. 2008)................................................................. 14

*Schering Corp. v. Geneva Pharms., Inc.*,
    339 F.3d 1373 (Fed. Cir. 2003)......................................................... 12, 19, 22

*Scripps Clinic & Research Found.*,
    927 F.2d 1565 (Fed. Cir. 1991)............................................................... 15, 17

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005)............................................................... 20, 22

*Telemac Cell. Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001).................................................................... 10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    593 F.3d 1325 (Fed. Cir. 2014).................................................................... 14

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
    295 F.3d 1292 (Fed. Cir. 2002)...................................................................... 6

*Valeant Int'l SRL v. Watson Pharm., Inc.*,
    No. 10-20526-CIV-MORENO, 2011 U.S. Dist. LEXIS 128742 (S.D. Fla. Nov. 7,
    2011), *aff'd*, 534 F. App'x 999 (Fed. Cir. 2013) ........................................ 12

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
    853 F.3d 1272 (Fed. Cir. 2017).................................................................... 13

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................... 7

## I.      Nature and Stage of Proceedings

Plaintiffs ("Pernix") sued Alvogen for infringement of patents that cover Pernix's

Zohydro® ER.[1]  Alvogen seeks to sell infringing generic copies of Zohydro® ER before the

patents-in-suit expire.  Pernix submits this brief in opposition to Alvogen's motion for summary

judgment of invalidity by anticipation based on the Devane and Huang references ██████.

## II.     Summary of Argument

Alvogen concedes that Devane and Huang do not mention hepatically impaired patients.

Accordingly, Alvogen does not dispute that neither reference expressly discloses: "treating pain

in a patient having mild or moderate hepatic impairment"; "administering to the patient having

mild or moderate hepatic impairment a starting dose of an oral dosage unit having hydrocodone

bitartrate as the only active ingredient . . . wherein the starting dose is not adjusted relative to a

patient without hepatic impairment"; or particular pharmacokinetic ("PK") profiles in patients

with mild and moderate hepatic impairment, as required by the asserted claims.  Nor does

Alvogen dispute that Devane and Huang fail to expressly provide a dose for "treating" pain or

"administering" to patients with mild or moderate hepatic impairment.  Alvogen contends

instead that those limitations are taught inherently by Devane and Huang.  Alvogen is wrong.

First, Alvogen rehashes arguments that the Court already rejected, alleging that "[n]ewly

discovered **results** of known processes . . . are not patentable because **such results** are inherent."

D.I. 119 at 9-10, quoting *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368,

1376 (Fed. Cir. 2001) ("*BMS*").  In its *Markman* decision, the Court found Alvogen's reliance on

*BMS* "unpersuasive" because, unlike the terms at-issue in that case, the starting dose limitation

---

[1] Pernix dropped patents and claims to narrow the issues in the case, and currently asserts claims 1-4, 11-12, 17 and 19 of U.S. Patent No. 9,265,760 ("the '760 patent"), and claim 1 of U.S. Patent No. 9,339,499 ("the '499 patent") (collectively, the "asserted claims" of the "patents-in-suit.").  The patents-in-suit share a common specification.

here is "**not merely a** statement of purpose or **result**."  D.I. 69 at 3 n.2.  And the Court found, as

did the Examiner, that the claimed **methods** recite "a manipulative difference over the prior art."

*Id.*

Second, Alvogen attempts to avoid its burden of showing that Devane or Huang discloses

each and every claim limitation, contending that "anticipation rests on a single issue" of whether

"treatment of the general population . . . includes treating a sub-population" of hepatically

impaired patients.  ▮▮▮▮▮▮.  That improperly disregards express elements of the claimed

method, which meaningfully differ from those in the prior art.  Regardless, hepatically impaired

patients are not a "subpopulation" of the patients studied in Devane and Huang.  To the contrary,

the clinical studies in both references **excluded** hepatically impaired patients.

Third, Alvogen cites testimony from Pernix's expert, who agreed that in general pain

"patients" could include patients with hepatic impairment.  That testimony is outside of the four

corners of, and unrelated to, the disclosures of Huang and Devane.  And Alvogen ignores the

state of the art as a whole, which disclosed the practice of **lowering** the starting doses of

extended release opioids for hepatically impaired patients.  Huang and Devane are silent on

hepatic impairment, and thus disclose nothing contradicting that practice.  Alvogen therefore

wrongly cherry-picks snippets of extrinsic evidence, while ignoring contrary testimony and

knowledge in the art that hepatically impaired patients were dosed very differently from patients

without hepatic impairment.

Fourth, Alvogen misstates the law by portraying a New Jersey district court decision that

merely denied a preliminary injunction as controlling "Federal Circuit law" on inherent

anticipation.  Federal Circuit precedent makes clear that new methods for using known

compositions are not inherently anticipated by different methods of using those compositions.

<u>Fifth</u>, Alvogen's expert, Dr. Mayersohn, stated that physicians following the prior art's teachings **<u>could</u> <u>adjust</u>** the starting dose when following the alleged anticipatory teachings of Devane and Huang with hepatically impaired patients.  That admission alone defeats Alvogen's motion, as inherency requires inevitability and invariability, not probabilities or possibilities.

<u>Sixth</u>, Alvogen fails to show that Huang is prior art.  It is not.  The inventors here had the results from the clinical study described in the patents-in-suit prior to Huang's filing date, as Alvogen's own expert confirmed.

As discussed below, Alvogen's alleged undisputed facts are either irrelevant or disputed. Moreover, Alvogen's motion ignores other material factual disputes, including: Alvogen's assertions that ███████████████████████████████████████████— exactly the opposite of what it alleges in its motion; whether Devane and Huang enable a method of treating pain in patients with mild and moderate hepatic impairment; whether the methods of treating pain in Devane and Huang encompass hepatically impaired patients, and, if so, whether Devane and Huang describe that species (hepatically impaired patients) with sufficient specificity that a POSA could "at once envisage" it; whether physicians conventionally prescribed a lower starting dose of ER opioids to patients with mild and moderate hepatic impairment; whether and how a POSA would have singled out the two formulations cited by Alvogen from the dozens of other formulations in Devane and Huang to administer to hepatically impaired patients; and whether no adjustment in the starting dose necessarily results from PK values falling within certain ranges set forth in an FDA guidance.

## III. <u>Facts</u>

Pain is the most common reason for doctor visits in the United States.  Ex. A, '760 Patent col. 1:33-37.   It can be acute, lasting until the underlying condition is healed or removed, or chronic, persisting for years.  *Id.*  Physicians prescribe Pernix's Zohydro® ER, an extended

release ("ER") formulation containing hydrocodone (an opioid), to manage pain severe enough to require daily, around-the-clock, long-term treatment for which alternative treatment options are inadequate. *Id.* at 1:48. Hepatic impairment (*i.e.*, reduced liver function) complicates treatment of pain because the liver metabolizes (breaks down) most opioids. So the same dose of an opioid generally leads to higher blood levels of drug ($C_{max}$ and AUC) in hepatically impaired patients compared to patients without hepatic impairment, meaning that hepatically impaired patients receive too much drug (*i.e.*, an overdose).[2] Such increases in AUC or $C_{max}$ "can lead to many problems, including need for adjusting dose, complications for physicians in prescribing, need for liver function tests, lack of availability of correct doses, lack of availability of certain medications, to those with hepatic impairment," sedation, respiratory depression, or death. *Id.* at 2:44-47, 4:30-36. Thus prior to the patents-in-suit, physicians would **<u>decrease</u>** the starting dose of opioids in patients with hepatic impairment to counter the effect of reduced liver function. *Id.* at 2:52-56.[3]

In fact, the patents-in-suit describe five prior art commercial ER opioid products that required a reduction in dose for hepatically impaired patients. *Id.* at 3:10-4:29. They also discuss the 2013 Bond Abstract regarding another hydrocodone ER formulation, later approved by the FDA as Vantrela™ ER. That product had a clinically significant difference in AUC for patients with moderate hepatic impairment: "the delivery of **<u>[ER] hydrocodone</u>** . . . led to **<u>systemic exposure to hydrocodone</u>** [AUC] **<u>that was ~70% higher in subjects with moderate hepatic impairment vs normal hepatic function</u>**." *Id.* at 2:56-65. This increase in AUC

---

[2] $C_{max}$ and AUC are PK parameters that measure how well and quickly the body breaks down a drug. $C_{max}$ refers to the maximum concentration of drug in the patient's blood, and AUC (<u>A</u>rea <u>U</u>nder the <u>C</u>urve) is a measure of total exposure to the drug over time. *Id.* at 11:12-23.

[3] Unless otherwise indicated: "Ex." refers to an exhibit attached to the Declaration of Josh Calabro, Esq.; emphases have been added; and objections have been omitted.

required a label instruction stating that patients with mild or moderate hepatic impairment should "[i]nitiate therapy with **one half of the recommended initial dose** and titrate carefully." Ex. B, Vantrela™ ER Prescribing information dated January 2017 at 1. But lowering the dose complicates treatment. Unable to rely on the starting dose known to provide safe and effective pain relief in the unimpaired patient population, physicians instead must determine an appropriate dose for each hepatically impaired patient individually, while adjusting dosages and monitoring the patient to try to safely achieve efficacy on a case-by-case basis. *See* Ex. A at 4:30-36.

The inventors here unexpectedly found that physicians could prescribe the **same** starting dose of certain hydrocodone ER compositions in patients with and without hepatic impairment, thus providing a safer and simpler way of treating those patients. Ex. A at 4:40-65. [4] That new method of administration minimizes the increase in AUC and $C_{max}$ that one normally expects in hepatically impaired patients, rendering that increase "not clinically significant." *Id.* at 5:37-41, 23:27-38. The asserted claims, therefore, recite methods of treating pain in patients with mild or moderate hepatic impairment by administering an ER hydrocodone oral dosage unit, and require particular PK profiles and/or no starting dose adjustment for patients with mild and moderate hepatic impairment relative to patients without hepatic impairment.

---

[4] Alvogen asserts the inventors "took [formulations] wholesale" from Devane. ▮▮▮▮▮▮▮▮▮. The inventors used Devane's formulations pursuant to a license agreement with Elan Corp., the assignee of Devane. ▮▮▮▮▮▮▮▮▮▮▮▮▮. Regardless, Alvogen's *ad hominem* attacks are irrelevant, as "[n]ew uses of old products or processes are indeed patentable subject matter." *Perricone v. Medicis Pharm. Corp.*, 423 F.3d 1368, 1378 (Fed. Cir. 2005); *see* Section IV(D)(2), below.

## IV.    Argument

### A.    Legal Standard

#### 1.    Anticipation

Alvogen bears the burden of proving invalidity, on a limitation-by-limitation basis, by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). That burden is "'especially difficult' when, as is the present case, the infringer attempts to rely on prior art that was before the patent examiner during prosecution." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004). Anticipation requires that a single reference disclose every limitation of the claimed invention, expressly or inherently. *Rapoport v. Dement*, 254 F.3d 1053, 1057 (Fed. Cir. 2001). "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) ("The mere fact that a certain thing may result from a given set of circumstances is not sufficient."), *abrogated in part on other grounds by Pfaff v. Wells Elecs.*, 525 U.S. 55 (1998); *Mehl/Bio. Int'l Corp. v. Milgraum M.D.*, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("Occasional results are not inherent."); *Glaxo, Inc. v. Novopharm Ltd.*, 830 F. Supp. 871, 874 (E.D.N.C. 1993), *aff'd*, 52 F.3d 1043 (Fed. Cir. 1995) (no inherency where a person following the prior art "sometimes obtains the result set forth in the claim, it must invariably happen."); *Eli Lilly & Co. v. Teva Pharms., USA, Inc.*, 2004 U.S. Dist. LEXIS 14724, at *79-*87 (S.D. Ind. July 29, 2004), *aff'd*, 2005 U.S. App. LEXIS 14583 (Fed. Cir. July 13, 2005) (finding 99.99% "probability" that prior clinical trials embodied all of claim limitations insufficient to prove inherency).

"An anticipating reference [also] must enable that which it is asserted to anticipate." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008). "Thus, it is not enough that

the prior art reference discloses part of the claimed invention, which an ordinary artisan might

supplement to make the whole, or that it includes multiple, distinct teachings that the artisan

might somehow combine to achieve the claimed invention." *Net MoneyIn, Inc. v. Verisign, Inc.*,

545 F.3d 1359, 1369 (Fed. Cir. 2008).

### 2.   <u>Summary Judgment</u>

"Anticipation is a question of fact . . . [and] [w]hether a claim limitation is inherent in a

prior art reference is a factual issue on which evidence may be introduced." *Rapoport*, 254 F.3d

at 1057.  Summary judgment is appropriate only in the absence of any genuine issue of material

fact, where the evidence establishes that the moving party is entitled to a judgment as a matter of

law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  A factual dispute

is "genuine" if a reasonable fact-finder could return a verdict for the non-movant and "material"

if it would affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986).  In deciding a summary judgment motion, the Court must view the evidence in a light

most favorable to the party opposing the motion, and must draw all reasonable inferences and

resolve all doubts in the favor of the non-moving party.  *Id.* at 255.

### B.   <u>Alvogen attempts to re-litigate issues that the Court already resolved.</u>

During claim construction, Alvogen argued that the phrase "wherein the starting dose is

not adjusted" is non-limiting because it "does not have any effect on how that administering step

is performed," and thus "imparts no **<u>manipulative difference</u>** to the practice of the method."

D.I. 59 at 14.  That argument tracks verbatim the "legal standard for inherent anticipation, as

adopted by th[is] Court, [which] requires the factfinder to compare the physical steps of the

patent with the physical steps of the prior art method and assess whether there is a **<u>manipulative</u>**

**<u>difference</u>** between them." *Glaxosmithkline LLC v. Teva Pharms. USA, Inc.*, No. 14-878-LPS-

CJB, Order, at 1 (D. Del. June 10, 2017 (Ex. C) (citation omitted).

The Court rejected Alvogen's claim construction argument because not "adjusting the starting dose relative to a patient without hepatic impairment is, in fact, a **manipulative difference over the prior art**."   D.I. 69, at 3 n.2.  The Court found that:

> the ability of a patient with [] hepatic impairment to gain the same benefits from the opioid that a non-hepatically impaired patient receives in just one dose **differs from the prior art**. . . .
>
> the claim phrase explaining that hepatically and non-hepatically impaired patients get the same starting dose . . . does have an effect on how the administering step is performed . . . because patients with hepatic impairment ingest a **different dose than they normally would, given the prior art**;
>
> a physician would ***not*** normally give a hepatically impaired patient the same dose as a patient without a hepatic impairment; and
>
> [s]ince the method of treating pain in the hepatically impaired patient is **different than the prior art's method** of treating pain in that same patient, having a patient ingest the same initial dose regardless of their hepatic impairment is not just a mental step.

D.I. 69 at 2-3 n.3 (italicized emphasis original).  The Court's *Markman* findings therefore foreclose Alvogen's theory of inherency.  *Bondyopadhyay v. United States*, No. 14-147C, 2018 U.S. Claims LEXIS 79, at *14-15 (Fed. Cl. Feb. 9, 2018) ("[P]rior findings and the claim construction based on those findings are law of the case and 'are not available for redetermination'"), quoting *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987); *Anderson Corp v. Fiber Composites, LLC*, 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007) (recognizing district court's claim construction as law of the case for purposes of trial).  Moreover, in its *Markman* decision, the Court recognized that the claims include "no compositional difference over the prior art," citing the Examiner's rejection of a parent application in view of Devane.  D.I. 69 at 3 n.2; *see* D.I. 66 at A-143-44.  The Court (and the Patent Office) thus understood the patents-in-suit disclose "identical" formulations to those in Devane ████████████████, but found that inconsequential because the inventions here

8

"differ[] from prior art 'in **the method of using that composition**,'" as "the prior art would not lead a skilled artisan to give the same starting dose to impaired and unimpaired patients." *Id.*, *quoting* D.I. 66 at A-156, and citing D.I. 66 at A-138; *Glaxo*, 376 F.3d at 1348 (noting the "especially difficult" burden of proving invalidity based on references considered by the Examiner).

        **C.**       **One skilled in the art would not understand
or infer that Devane's and Huang's methods
of treating pain encompassed hepatically impaired patients.**

           **1.**      **Hepatically impaired patients were not a "subpopulation"
but rather a different group distinct from the healthy patient
populations treated with hydrocodone in Devane and Huang.**

Alvogen's experts admit that Devane and Huang do not mention hepatic impairment:



. Thus, among other limitations, Huang and Devane do not mention i) hepatically impaired patients; ii) treating those patients for pain; iii) administering an ER hydrocodone composition to patients with mild or moderate hepatic impairment without adjusting the starting dose relative to patients without hepatic impairment; and iv) "a release profile of hydrocodone such that the average hydrocodone $AUC_{0\text{-inf}}$ per 20 mg of hydrocodone bitartrate dosed to subjects suffering from moderate hepatic impairment . . . in the range of about 352 ng*h/mL to about 666 ng*h/mL." Ex. A at Claim 11.

Alvogen must, but did not, show that prior art inherently discloses "each and every" one of those limitations. *Glaxo*, 52 F.3d at 1047. Huang's and Devane's general references to "methods of treating pain" in unspecified patients ███████████████████████████ ███████████████ do not inherently disclose any of the claim limitations regarding hepatic impairment, at least because all of the examples in Devane and Huang confine treatment to healthy patients. Both Devane and Huang disclose clinical studies of hydrocodone formulations. But those studies involved only healthy patients—not patients with hepatic impairment. Huang expressly states that its clinical studies included only "[h]ealthy" subjects, "free of significant abnormal findings," and excluded any subjects with "hepatobiliary abnormalities." Ex. F at col. 35:54-55, 36:54-55; ███████████████████████. Alvogen's expert admitted as much:

███████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████████

██████████████████████

██████████████████████

█████████████████████████████████

███████████████████████; *see also* ███████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████. The underlying report for the only clinical study of an ER hydrocodone composition in Devane likewise confirms that the study involved "healthy adults," the patient records show that no study subject had hepatic impairment.[5] ███████████████████████████████████████

─────────────────────

[5] Case law on which Alvogen relies ███████████████████ confirms that "[e]xtrinsic evidence"— even if "not published"—"may be used to interpret the allegedly anticipating reference and [to] shed light on what it would have meant to [a PHOSITA]." *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1346 (Fed. Cir. 2018); *see Telemac Cell. Corp. v. Topp*

███████████████  █████████████████████████████████████████

█████████████████████████████████.  Alvogen's expert testified that Devane's

silence regarding hepatic impairment proves that those patients were not included in the clinical

study:

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

████████████████; *see Eli Lilly*, 2004 U.S. Dist. LEXIS 14724, at *79-*87 (claims for treating

PMS not inherently anticipated by clinical study of same compound for treating depression,

where defendant's expert "could not identify any one patient record and say with certainty that

any one female subject actually had PMS," despite "greater than 99.99999%" probability that at

least one of the 112 women in the study had PMS).

In *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952 (Fed. Cir. 2014), the Court found that a

prior art reference did not anticipate claims reciting a "single (also known as 'saturated') bond at

the C5-C6 position," notwithstanding the prior art's express disclosure of a "C6-C10 chain which

can be *saturated or unsaturated*."  *Id.* at 959 (emphasis original).  Because "**[a]ll of the**

**examples** of [the prior art were] drawn to compositions in which the C5-C6 bond is a double

bond," the Court found the general reference to "saturated or unsaturated" bonds "too sparse" to

disclose a saturated (single) bond.  *Id.*  Here, unlike in *Allergan*, the prior art references do not

even contemplate the missing claim elements; Devane and Huang do not mention hepatically

impaired patients.  Accordingly, the asserted claims do not "treat[] a subpopulation of [the] pain

_____

*Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001) ("[R]ecourse to extrinsic evidence is proper
to determine whether a feature, while not explicitly discussed, is necessarily present in a
reference.") (citations omitted).

patients" in Devane and Huang, as Alvogen contends ████████████████, but rather treat a different group, separate from the healthy patients in Devane's and Huang's examples. *See Glaxo Group.*, 376 F.3d at 1348 (finding no inherent anticipation where defendant's expert deviated from the examples in the prior art to achieve the claimed invention); *Valeant Int'l SRL v. Watson Pharm., Inc.*, No. 10-20526-CIV-MORENO, 2011 U.S. Dist. LEXIS 128742, at *14 (S.D. Fla. Nov. 7, 2011), *aff'd*, 534 F. App'x 999 (Fed. Cir. 2013) ("[T]he explicit disclosure of Example 1 of the Mehta patent produces only bupropion hydrochloride, not bupropion hydrobromide. . . . [Thus,] bupropion hydrobromide is [not] the 'natural result flowing from the explicit disclosure of the prior art.'"), quoting *Schering Corp. v. Geneva Pharms., Inc*., 339 F.3d 1373, 1377 (Fed. Cir. 2003); *Koios Pharms. LLC v. medac Ges. für kiln. Spez. mbH*, No. IPR2016-01370, Paper No. 54, at 11, 18-20 (P.T.A.B. Feb. 7, 2018) (Ex. H) (doses "greater than 30 mg/ml" not anticipated because there was "no link between [the prior art's] embodiment" disclosing a dose of 12.5–25 mg/ml and prior art's "general discussion" of 0.1 mg/ml to 40 mg/ml doses), citing *Ecolochem, Inc. v. So. Cal. Ed. Co*., 227 F.3d 1361 (Fed. Cir. 2000).

> ### 2.  Devane and Huang do not anticipate the asserted claims even if hepatically impaired patients were a subpopulation of the pain patients treated with hydrocodone in Devane and Huang.

Even if the general references to treating pain in unspecified patients encompassed hepatically impaired patients (which they do not), Alvogen's arguments still fail.  In that case, hepatically impaired patients would be a species of the general patient genus.  And "the disclosure of a genus in the prior art is not necessarily a disclosure of every species that is a member of that genus."  *Atofina v. Great Lakes Chem. Corp*., 441 F.3d 991, 999 (Fed. Cir. 2006) (prior art disclosing "temperature range of 100 to 500 °C" did not anticipate even though it was "broader than and fully encompasses the specific temperature range claimed in the [asserted patent] of 330 to 450 °C.").  Huang's and Devane's general methods of treating pain lack

"sufficient specificity" to anticipate treating pain in hepatically impaired patients because they include no "specific preference" for treating those patients. *Atofina*, 441 F.3d at 999; *In re Petering*, 301 F.2d 676, 682-83 (C.C.P.A. 1976). Devane and Huang do not distinguish hepatically impaired patients as a "small recognizable class" separate from other groups, *e.g.*, pregnant women and nursing mothers, which Alvogen's expert admitted might not be encompassed by the prior art methods of treating pain:



Thus, one skilled in the art could not "at once envisage" hepatically impaired patients within Devane's and Huang's general patient populations, at least in view of Alvogen's own admissions that the references are equally silent about groups that purportedly fall inside and outside of those populations. ██████████████████████████████████████████████████████████████████████████████████████████;

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1262 (Fed. Cir. 1989); *In re Meyer*, 599 F.2d 1026 (C.C.P.A. 1979) (declining to find that a disclosed genus anticipated a species because, if it did, the genus "would include an untold number of species."); *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1285–86 (Fed. Cir. 2017) (no anticipation where an IPR petitioner failed to, among other things, "establish [the] size" of the genus)

Further, Alvogen's inherency theory is predicated on Huang's and Devane's disclosure of a method of treating pain "in all patients." ███████. Dr. Mayersohn's admission that

---

[6] Like hepatically impaired patients, pregnant women and nursing mothers are often "special populations" specifically addressed in drug labels. *See, e.g.*, Ex. B at 1.

"potentially" some patients fall outside of that method alone precludes anticipation.  *Continental*,

948 F.2d at 1269 (inherency "may not be established by probabilities or possibilities").  And,

"whether a generic disclosure necessarily anticipates [species] within the genus . . . depends on

the factual aspects of the specific disclosure and the particular products at issue," which cannot

be resolved as a matter of law here, at least in view of Dr. Mayersohn's contradictory testimony.

*Sanofi-Synth. v. Apotex, Inc.*, 550 F.3d 1075, 1083-84 (Fed. Cir. 2008).

Moreover, Dr. Mayersohn stated it was merely possible to administer hydrocodone at the

same starting dose, not that it was necessarily so.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████  But that is insufficient to prove inherency.  *In re Robertson*, 169 F.3d 743,

745 (Fed. Cir. 1999) (that a feature in the prior art reference "could" operate as claimed does not

establish inherency); *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir.

1999) ("[A]n operator of the RD-1200 laser **could use** the laser [as claimed].  The possibility of

such an alignment does not legally suffice to show anticipation.  Occasional results are not

inherent."); *Therasense, Inc. v. Becton, Dickinson & Co*., 593 F.3d 1325, 1332 (Fed. Cir. 2014)

(whether the prior art "'**could have been arranged**' in a way that is not itself described or

depicted in the anticipatory reference" is insufficient); *Glaxo*, 52 F.3d at 1047 (no anticipation

where "the practice of Example 32 **could yield** crystals of either polymorph") *see also Dayco*

*Prods. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) ("equivocal" expert

statement ("the hose . . . inherently being radially outwardly expanded *or the hose being radially*

*inwardly compressed*") insufficient to prove inherency) (emphasis original); *Allergan, Inc. v.*

*Apotex Inc*., 754 F.3d 952, 960-61 (Fed. Cir. 2014) (claims directed to topical application on the skin not inherently anticipated by references to eyedrop formulations because "it was **at least possible** to administer eyedrops in a way as to reduce the flow of liquid to the [skin] to close to zero.").

> 3.    **Alvogen cannot cherry-pick extrinsic evidence
> to plug holes in its inherency theory while ignoring
> <u>that the state of the art as a whole undermines that theory.</u>**

Alvogen's experts agree that Devane and Huang fail to disclose administering their formulations to hepatically impaired patients without adjusting the starting dose. ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

Alvogen attempts to fill that gap with testimony from Pernix's expert, who generally agreed that "some percentage" of "patients who receive treatment with an opioid" in 2012 had hepatic impairment. ████████████. That testimony constitutes Alvogen's only evidence that Devane's and Huang's methods allegedly encompass treating pain in hepatically impaired patients, as required by all asserted claims. Dr. Gudin's testimony had nothing to do with the disclosure of Huang or Devane. Alvogen therefore improperly uses Dr. Gudin's testimony not "to explain the disclosure of a reference," but rather to "prove facts beyond those disclosed in the reference in order to meet the claim limitations." *Scripps Clinic & Research Found*., 927 F.2d 1565, 1576 (Fed. Cir. 1991) (infringers cannot rely on extrinsic evidence to "fill gaps in the reference"), *overruled in part on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed Cir. 2009); *see, e.g., Biacore v. Thermo Bioanalysis Corp*., 79 F. Supp. 2d 422, 459-

60 (D. Del. 1999) ("[E]xtrinsic evidence may be used to explain but not expand the meaning of a reference."), quoting *In re Baxter Travenol Labs*., 952 F.2d 388, 390 (Fed. Cir. 1991).

In any event, Dr. Gudin's testimony provides no support for Alvogen's inherency theory because, as Dr. Gudin explained, prior to the inventions in the patents-in-suit, hepatically impaired patients treated with ER opioids received an **adjusted starting dose** relative to patients without hepatic impairment. ██████████████████. Thus, Dr. Gudin's testimony confirms that a POSA would not interpret Devane's or Huang's silence regarding hepatic impairment as inherently instructing administration of the same starting dose to patients with and without hepatic impairment.

In fact, references cited in Huang itself confirm Dr. Gudin's testimony that the practice was to reduce the dose for hepatically impaired patients. Dr. Mayersohn agreed that ████



███████. That reference confirmed that the practice in the art, based on a clinical study of ER oxycodone in hepatically impaired patients, was to reduce the dose for oxycodone for hepatically impaired patients. ████ Yet Dr. Mayersohn failed to consider the PDR in forming his opinions. ████

One skilled in the art would view the ER oxycodone hepatic impairment clinical data and dosing precautions as applicable to ER hydrocodone, especially in view of: the lack of any such data for commercial IR or ER hydrocodone products; the known similarity between hydrocodone and oxycodone;[7] and the absence of any teachings in Devane or Huang that would distinguish

---

[7] ██████████████████████████████████ In this

between the use of those two opioids in their methods of treating pain.  ████████████
█████████████████████████████████████████████████████████
████████████████████████████████

Alvogen similarly disregards all of the other prior art clinical data on ER opioids showing
that a dosage adjustment in patients with mild and/or moderate hepatic impairment was needed.
*See* Section III, supra; █████████████████████. Thus, those skilled in the art would not
interpret Devane's and Huang's silence on hepatic impairment as erasing that existing clinical
data and eliminating the prevailing understanding about the need for dosage adjustments.  The
awareness in the art that pain patients include those with hepatic impairment came with the
understanding that hepatically impaired patients required an adjusted starting dose.  Alvogen
improperly relies on the former without accounting for the latter.  *Dayco Prods.*, 329 F.3d at
1368 ("[T]he dispositive question regarding anticipation is whether **one skilled in the art would
reasonably understand or infer** from the prior art reference's teaching that every claim
[limitation] was disclosed in that single reference."); *Biacore v. Thermo Bioanalysis Corp.*, 79 F.
Supp. 2d 422, 459-60 (D. Del. 1999) ("The role of extrinsic evidence [in anticipation] is to
educate the decision-maker to what the reference **meant to persons of ordinary skill** in the field
of the invention."), quoting *Scripps Clinic & Rsrch. Found.*, 927 F.2d at 1576; *Cont'l Can*, 948
F.2d at 1269 (extrinsic evidence is relevant in "situations where the **common knowledge** of
technologists is not recorded in the reference; that is, where technological facts are known to
those in the field of the invention, albeit not known to judges."); *see, e.g.*, *Koios*, No. IPR2016-
01370, Paper No. 54, at 18-20 (holding claims requiring doses greater than 30 mg/ml not
case, Alvogen's expert professed ignorance of those similarities.  ████████████████████
████████████████████████████████████████████
███████████████████████████████████     ████████

anticipated in part because "conventional practice in the art was to administer . . . 25 mg/ml or less.")

### D. Alvogen mischaracterizes the law on inherent anticipation.

#### 1. Neither the district court nor the Federal Circuit held any claims invalid in *Aventis*.

Alvogen argues that Devane and Huang inherently anticipate Pernix's claims "as a matter of Federal Circuit law" because "the Federal Circuit affirmed a prior decision holding exactly this way." ███████████, citing *Aventis Pharms., Inc. v. Barr Labs., Inc.*, 411 F. Supp. 2d 490, 519-24 (D.N.J. 2006), *aff'd* 208 F. App'x 842-43 (Fed. Cir. 2006) (non-precedential). Alvogen's "Federal Circuit law" consists of a New Jersey district court decision denying a motion for a preliminary injunction, which the Federal Circuit affirmed under Rule 36. But the *Aventis* district court merely held that plaintiff failed to show that defendant's anticipation argument "ha[d] no merit" with respect to three patents. *Aventis Pharms.*, 411 F. Supp. 2d at 518. Neither that court nor the Federal Circuit held those patents were invalid as inherently anticipated or otherwise. Indeed, Aventis asserted the same patents in later litigations, and a court construed the terms of those patents in 2011—five years after Alvogen alleges they were held inherently anticipated by the Federal Circuit. ███████████; *see Aventis Pharm., Inc. v. Impax Labs., Inc.*, No. 02-1322 (GEB), 2011 U.S. Dist. LEXIS 3824, at *11 (D.N.J. Jan. 13, 2011), *rev'd*, 715 F.3d 1363 (Fed. Cir. 2013).

Regardless, Alvogen improperly uses the district court's decision in *Aventis* to mischaracterize Federal Circuit law. <u>First</u>, the *Aventis* court found it "not valid" to "differentiate methods based on a characteristic of the patient treated." *Aventis Pharms.*, 411 F. Supp. at 520 n.14 ("[O]ne must separate the analysis of the method characteristics from the analysis of the patient[] characteristics"). But the Federal Circuit differentiates methods based on characteristics

of the patients treated.  *Rapoport v. Dement*, 254 F.3d 1053, 1061 (Fed. Cir. 2001) (no inherent

anticipation because, *inter alia*, prior art "does not show administering buspirone . . . to patients

suffering from sleep apnea," but rather discloses administering it "to nine normal volunteers.")

Moreover, the Federal Circuit has not endorsed an inherency analysis that focuses on some claim

elements while disregarding others.  Rather, "**each and every**" limitation must be found either

expressly or inherently in a single prior art reference."  *Glaxo*, 52 F.3d at 1047.  To the extent the

court in *Aventis* obviated that requirement as to patient characteristics, it was wrong.

     Second, the court in *Aventis* stated that "inherent anticipation does not require that a

person of ordinary skill in the art at the time would have recognized the inherent disclosure."

*Aventis Pharms.*, 411 F. Supp. at 519, quoting *Schering*, 339 F.3d at 1377.  But earlier binding

precedent states the opposite.  *Continental*, 948 F.2d at 1268-69 ("[E]vidence must make clear

that the missing descriptive matter is necessarily present in the thing described in the reference,

**and that it would be so recognized by persons of ordinary skill**."); *In re Seaborg*, 328 F.2d

996 (Cust. & Pat. App. 1964) (rejecting inherency theory because "the claimed product, if it was

produced in the Fermi process, was produced in such minuscule amounts and under such

conditions that its presence was undetectable."); *Eibel Process Co. v. Minn. & Ont. Paper Co.*,

261 U.S. 45, 66 (1923) ("[A]ccidental results, not intended **and not appreciated**, do not

constitute anticipation."); *see also Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367,

1377 (Fed. Cir. 2002) ("If the two percent reflectance limitation is inherently disclosed by the

[prior art] patent, it must be necessarily present and a person of ordinary skill in the art **would**

**recognize its presence**.").[8]  Alvogen does not even try to argue that one skilled in the art would

have recognized that Devane's and Huang's formulations could be administered to patients with

---

[8] Even Alvogen's later decision notes that prior art "expressly recognize[d]" the inherent
property.  *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1349 (Fed. Cir. 1999).

mild and moderate hepatic impairment without adjusting the starting dose relative to patients without hepatic impairment, or would produce the claimed PK profile that allows for such dosing.

Third, the court in *Aventis* stated that an inherent characteristic "need not be present in every instance of use or practice of the [prior art] method." *Id.* at 522. Alvogen asserts that "conclusion follows" from Federal Circuit's decision in *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005). ███████. It does not. In *SmithKline*, the Court merely stated that defendant "did not need to prove that it was impossible to make PHC anhydrate in the United States that contained no PHC hemihydrate," but instead had to show "the manufacture of PHC anhydrate **according to the [particular prior art reference] necessarily** results in the production of PHC hemihydrate." 403 F.3d at 1333-334. The Federal Circuit has declined to find inherency where the infringer focused on only a subset of options. *Atofina*, 441 F.3d at 1000 (Fed. Cir. 2006) ("[The] calculations [defendant] points to as inherently disclosing the contact times are based on the first and second *examples* in JP 51-82206, which . . . do not say anything about contact times. Because anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation, JP 51-82206 cannot inherently anticipate the claims of the [asserted patent].") (emphasis original); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002) ("[Defendant's] testimony only purports to establish that mirrors manufactured using the vacuum thermoforming process yield a varying radius of curvature along the major axis, but does not purport to establish that the mirror of the [prior art] patent can **only** be manufactured by that particular process.").

Alvogen focuses solely on one formulation from each of Devane and Huang. But Alvogen does not explain whether Huang's ███████████████ have the same properties

20

as ███████████, or **how** a POSA would have selected ███████████ to administer to

hepatically impaired patients from Huang's nineteen ER hydrocodone formulations, or why the

"natural result flowing" from Huang would be treating hepatically impaired patients with

formulation M.  *Allergan*, 754 F.3d at 960-61 (administration of an eyedrop did not inherently

disclose application to skin, where the prior art contained "no express teaching . . . that described

**how** fluid from the eyedrop could transfer to the skin."); *compare* ████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████ *with Glaxo*, 830 F.Supp. at 874 ("[I]t is not sufficient that a person following the

[prior art] disclosure sometimes obtain the result set forth in the claim, it must invariably

happen.").

Alvogen's omission is significant because the Bond abstract shows that some ER

hydrocodone formulations fail to produce the claimed PK profile that allows for not adjusting the

starting dose in patients with mild and moderate hepatic impairment.  *See* Section III, *supra*; *see*

*generally Allergan, Inc. v. Sandoz, Inc*., 726 F.3d 1286, 1294 n.1 (Fed. Cir. 2013) (finding "the

dose reduction 'from 3 to 2 times a day without loss of efficacy' limitation [not] an inherent

property" because, while "it may be true that the mere administration of [the known formulation]

twice daily in any fixed combination formulation inherently produces the claimed result, . . . it

may also be true that only certain fixed-combination formulations produce this result.").  Finally,

Alvogen overlooks the context of its quote from *Aventis*, where the Court stated that the

"characteristic of treating hepatically impaired patients is necessarily present in the teaching of

the Carr reference, which discloses a method for treating all patients; it need not be present in

every instance of use or practice of the Carr method."  411 F. Supp. 2d at 522.  That principal

does not apply here because Huang and Devane do not disclose methods of treating pain in all

patients.  *See* Section IV(c)(2), *supra*.

> **2.  The patents-in-suit claim a *new method of using* hydrocodone—not the recognition of a new result or property inherently flowing from an old use, as in Alvogen's authority.**

Alvogen misplaces reliance on the *Aventis* court's reasoning under a different legal

standard.  There, the claims recited "method of using fexofenadine to treat [allergies in]

hepatically impaired patients, **resulting** in reduced cardiac side effects," which was the

characteristic the Court found missing from, but inherent in, the prior art method of using

fexofenadine to treat allergies in all patients.  *Id.* at 515, 525.  Thus, the court merely recognized

that "newly discovered **results** are unpatentable because they are inherently anticipated" by prior

art that expressly discloses "use of the **same method**, for the same purpose."  *Id.* at 523, quoting

*BMS*, 246 F.3d at 1376; *see Schering*, 339 F.3d at 1381 ("The inherent **result** of administering

loratadine to a patient is the formation of DCL."); *SmithKline*, 403 F.3d at 1344 ("[M]anufacture

of PHC anhydrate according to the [prior art] patent necessarily **results** in the production of PHC

hemihydrate."); *Perricone*, 423 F.3d at 1380 ("Using the same composition claimed by Dr.

Perricone in the same manner claimed by Dr. Perricone naturally **results** in the same claimed

skin benefits."); *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002) ("[M]erely

describing unexpected beneficial **results** of a known process does not entitle Plaintiffs to patent

that process.").[9]

The court in *Aventis* expressly contemplated a different outcome had "Plaintiffs

---

[9] *Atlas Powder* and *In re Spada* are inapposite because they did not even involve a method claim but rather an inherent property (*e.g.*, "sufficient aeration is entrapped to enhance sensitivity to a substantial degree") of a composition claim.  190 F.3d at 1344; *see* 911 F.2d 705, 708 n.4 (Fed. Cir. 1990).

contended that the method patents actually taught a new method of using fexofenadine to treat hepatically impaired patients," in which case "the methods themselves might differ." 411 F. Supp. 2d at 521; *see Perricone*, 423 F.3d at 1378 ("[P]rinciples of inherency do not prohibit a process patent for a new use of an old structure."); *see, e.g., Allergan*, 726 F.3d 1286 (upholding validity of method claims directed to new dosing regimens for those known compositions); *see also Eli Lilly*, 2004 U.S. Dist. LEXIS 14724, at *79-*87. Here, Pernix contended, and the Court found, just that. *See* Section IV(B), *supra*; D.I. 69 at 3 n.2 (finding the starting dose limitation does **not** "simply express[] the **intended result** of a process step positively recited," and is "**not merely a statement of** purpose or **result**," but rather "does have an effect on how the administering step is performed," which "differs from the prior art" methods).

Alvogen agrees that claims are patentable if they recite a new use of a known compound, such as a "method of *treating* sunburn," as in *Perricone*, where the same composition had been used for cosmetic purposes. ███████████. But, while treating a different condition is a new use, so too is treating a condition with a different dose. Treating pain with 50 mg of an opioid is a new use compared to treating pain with 5 mg opioid, and a claim reciting the former would not be anticipated (expressly or inherently) by a reference disclosing the latter. *See Koios*, No. IPR2016-01370, Paper No. 54, at 18-20. The asserted claims' recitation of a relative rather than absolute dose makes no difference; existing methods of treating pain in hepatically impaired patients (*i.e.*, adjusted dose relative to healthy patients) differed from the claimed method (*i.e.*, no adjustment required relative to healthy patients), as the Examiner recognized during prosecution and the Court recognized in its *Markman* decision. *See* Section IV(B), *supra*; ██████ ██████████████. As discussed above, Alvogen misleadingly compares the claimed methods to existing methods of treating healthy patients, ignoring the express limitations relating

to hepatically impaired patients.  *See* D.I. 69 at 3 n.2 ("[H]aving **the same initial dose** for both types of patients **does change the method** of administering the drug.")

### E.   Alvogen's irreconcilable arguments and expert testimony preclude summary judgment in Alvogen's favor.

#### 1.   Alvogen's expert used the wrong claim construction.

The Court defined "administering" as "delivering into the body."  But Dr. Mayersohn admitted that he had no idea and had no opinion on whether alleged anticipatory prior art meets the "administering" limitation under that construction.



The Court also construed the starting dose limitation to mean "[t]he dose prescribed to a patient with mild or moderate hepatic impairment when initiating treatment is not reduced due to that hepatic impairment relative to the dose prescribed to a patient without hepatic impairment when initiating treatment."  D.I. 69 at 2.  Dr. Mayersohn again admitted he lacks the expertise to opine on whether prior art meets that claim element:



███████████████████████████████████████
███████████████████████████████
███████████████████████

█████████████████. Thus, Dr. Mayersohn's inability to offer opinions under the controlling constructions defeats Alvogen's motion. At the very least, Dr. Mayersohn's testimony raises issues of credibility that cannot be resolved on summary judgment.

**2.      Alvogen argued in a co-pending litigation that Huang** ██████████████████████████

In the Hysingla litigation, Purdue accused Alvogen of infringing the Huang patent. There, Alvogen argued ████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████

█████████████████. Here, Alvogen's expert, Dr. Weinberger, admitted that Huang ██ ██████████████████████

████████████████████████████████████ ████████████████████████ ██████████████████████

███████████████ Thus, Alvogen's own arguments at least raise disputed facts as to whether Huang discloses **any** method of treating pain, let alone a method of treating pain in patients with mild and moderate hepatic impairment.[10]

And, by Alvogen's reasoning in the Hysingla litigation, █████████████████ ███████████████████████████████████████ ████████████████████████████ Alvogen's admissions

---

[10] Here, the preamble, "a method of treating pain in a patient having mild or moderate hepatic impairment" limits the claims, at least because it provides antecedent basis for "the patient" recited in the body of the claim. And, unlike the starting dose limitation, Alvogen did not argue that the preamble was non-limiting during *Markman* proceedings.

in the Hysingla litigation thus foreclose any finding of anticipation.  *Abbott Labs. v. Sandoz, Inc.*, 544 F. 3d 1341, 1345 (Fed. Cir. 2008) ("An anticipating reference must enable that which it is asserted to anticipate.")  At the very least, they raise disputed facts that preclude granting summary judgment of invalidity by anticipation.

### 3. FDA guidance is irrelevant and, in any event, <u>the dosing limitations do not inevitably result from PK data.</u>

According to Alvogen, Huang's ███████████ provides PK values for patients with mild and moderate hepatic impairment that ███████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████

As an initial matter, Huang itself provides no data for patients with mild and moderate hepatic impairment versus patients with no hepatic impairment.  Moreover, the FDA guidance lends no support to Alvogen's argument because, "[w]hen more than one reference is required to establish unpatentability of the claimed invention[,] anticipation under § 102 [cannot] be found."  *Continental*, 948 F.2d at 1267 (Fed. Cir. 1991).

At most, the FDA guidance introduces another disputed fact.  As Dr. Mayersohn confirmed, the reported PK values for ████████ in patients with severe hepatic impairment also fall within FDA's standard for no clinically important effect of hepatic impairment—yet those patients require a lower starting dose:



 Thus, PK data meeting Alvogen's FDA standard does not inevitably obviate the requirement to adjust the starting dose.  And, Dr. Mayersohn's inconsistent testimony calls into question the reliability of his analysis, requiring credibility determinations that cannot be performed on summary judgment.  *Anderson*, 477 U.S. at 255; *see also*

Further, FDA does not necessarily require "drug companies to conduct [hepatic impairment] studies to determine optimal dosing of drugs metabolized by the liver," as Alvogen contends.  ▮▮▮▮▮  In 2010, for example, FDA gave Cephalon the option of submitting literature to support the dosing for hepatically impaired patients administered the Vantrela™ ER hydrocodone product, in lieu of conducting a clinical study with hepatically impaired patients. ▮▮▮▮▮  Because no such literature existed, Cephalon performed a study— and found Vantrela™ ER (as described in the Bond abstract) required an adjusted starting dose for patients with mild and moderate hepatic impairment.  ▮  Thus, FDA guidance (and clinical studies conducted pursuant to it) does not establish inherency.

### F.      Huang is not prior art.

As more fully articulated in Plaintiffs' Motion *in Limine* to Preclude Alvogen From Using the Huang Patent as Prior Art, Huang is not prior art to the patents-in-suit.  D.I. 137. Huang was filed in December 21, 2011, claiming priority to U.S. Provisional Application No. 61/426,306, filed December 22, 2010.  In *Dynamic Drinkware v. National Graphics*, 800 F.3d 1375 (Fed. Cir. 2015), the Federal Circuit held that an alleged anticipatory "reference patent is only entitled to claim the benefit of the filing date of its provisional application if the disclosure

of the provisional application provides support for the claims in the reference patent in compliance with § 112, ¶ 1." *Id.* at 1381. Here, Alvogen failed to compare the claims of Huang to the disclosure of the provisional application to which Huang claims priority. ████ ████████████████████████████████ Thus, the critical date under § 102(e) is Huang's filing date, December 21, 2011.

Dr. Mayersohn confirmed that the inventors had the clinical study results reported in Figure 1 of the '760 patent, and thus reduced the invention to practice, prior to that date. ████ ██████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ Inventor testimony corroborates the documentary evidence underlying Dr. Mayersohn's admission that the invention was reduced to practice prior to Huang's filing date. ████████████████████████████████████ ██████████████████████████; *see Estee Lauder, Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592, 594-95 (Fed. Cir. 1997) (reduction to practice occurred when inventor received and analyzed clinical test results, *i.e.*, "the *discovery* that an invention actually works") (emphasis original) (citation omitted).

## V.   Conclusion

For the foregoing reasons, Pernix respectfully requests that the Court deny Defendant's motion for summary judgment of invalidity by anticipation.[12]

---

[11] As discussed above in Section IV(E)(2), Alvogen is arguing in another litigation that ████ ██████████████████████████████████████████████████ ████████████████████████████████

[12] The Court allotted the parties a total of 45 pages for their Opening Briefs and 45 pages for their Answering Briefs in connection with Summary Judgment. Alvogen's Opening Briefs were

Respectfully submitted,

MCCARTER & ENGLISH LLP

*/s/* Daniel M. Silver
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King St., 8th Flr.
Wilmington, DE 19801
(302) 984-6331
*mkelly@mccarter.com*
*dsilver@mccarter.com*
*bsmyth@mccarter.com*

*Attorneys for Plaintiffs*

OF COUNSEL:

Dominick A. Conde
Christopher P. Borello
Brendan M. O'Malley
Josh Calabro
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
(212) 218-2100
*dconde@fchs.com*
*cborello@fchs.com*
*bomalley@fchs.com*
*jcalabro@fchs.com*

April 6, 2018

---

22 pages and 15 pages in length, and Plaintiffs' Answering Briefs are 28 pages and 16 pages in length.

29

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing

document were caused to be served on Aril 6, 2018 on the following counsel in the manner

indicated:

**BY EMAIL:**

Karen E. Keller
David M. Fry
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0700
*kkeller@shawkeller.com*
*dfry@shawkeller.com*
*nhoeschen@shawkeller.com*

Matthew J. Becker
Chad A. Landmon
David K. Ludwig
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
(860) 275-8100
*mbecker@axinn.com*
*clandmon@axinn.com*
*dludwig@axinn.com*

Seth I. Heller
Christopher M. Gallo
Axinn, Veltrop & Harkrider LLP
950 F. Street, NW
Washington, DC 20004
(202) 912-4700
*sheller@axinn.com*
*cgallo@axinn.com*

*Counsel for Defendant*
*Alvogen Malta Operations Ltd.*

Dated: April 6, 2018

/s/ Daniel M. Silver
Daniel M. Silver (#4758)

2

ME1 26952459v.1