# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PERNIX IRELAND PAIN DAC and<br>PERNIX THERAPEUTICS, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALVOGEN MALTA OPERATIONS LTD.,<br><br>*Defendant*. | § § § § § § § § § § § § | Civil Action No. 16-139-WCB |

## MEMORANDUM OPINION AND ORDER

In this order, the Court addresses a dispute between the parties over the admissibility of certain exhibits that the plaintiffs (collectively, "Pernix") intend to offer at trial. Defendant Alvogen Malta Operations Ltd. ("Alvogen") contends that the materials are inadmissible as hearsay. Pernix argues that the materials in dispute are non-hearsay and can be used to cross-examine Alvogen's witnesses.

**A. The Admissibility of Alvogen's Expert Witness Reports Against Alvogen**

The principal issue before the Court involves the admissibility of five exhibits (PTX 84, 85, 89, 133, and 134) proffered by Pernix. Those exhibits consist of reports by two experts who were retained by a related Alvogen entity in connection with another case. That case, Purdue Pharma L.P. et al. v. Alvogen Pine Brook LLC, Civil Action No. 15-687 (referred to as "the Hysingla litigation"), recently settled, quite literally, on the eve of trial. Pernix seeks to use Alvogen's experts' reports to challenge Alvogen's claim that U.S. Patent No. 8,808,740 to Huang is an invalidating prior art reference in this case.

Three of the exhibits in question are reports prepared by Alvogen expert Michael Mayersohn for the Hysingla litigation. To begin with, it is clear that statements by Dr. Mayersohn

1

in those reports may be used to impeach Dr. Mayersohn if he testifies in this case in a manner that is inconsistent with any of the statements he made in the reports he prepared for the Hysingla litigation. That much is not in dispute. See Fed. R. Evid. 613.

What is in dispute is whether the expert reports of Dr. Mayersohn and another of Alvogen's experts, Fernando Muzzio, in the Hysingla litigation are admissible as substantive evidence over a hearsay objection. Pernix's argument is that those statements are non-hearsay statements of an opposing party and are admissible under Fed. R. Evid. 801(d)(2). Alvogen contends that the statements do not satisfy the requirements of any of the categories of party admissions that are covered by that Rule. The Court agrees with Alvogen.[1]

Rule 801(d) defines certain statements as non-hearsay. The second subsection of that rule, Rule 801(d)(2), lists five types of statements that are attributable to an opposing party and are admissible if offered in evidence against the opposing party. Only three of the five are arguably pertinent here. Rule 801(d)(2)(B) refers to a statement that "is one the party manifested that it adopted or believed to be true." Rule 801(d)(2)(C) refers to a statement that "was made by a person whom the party authorized to make a statement on the subject." And Rule 801(d)(2)(D)

---

[1] During a telephonic conference on this matter, the Court raised the question whether the different identities of the Alvogen entities in this case and in the Hysingla litigation rendered the analysis under Rule 801(d)(2) inapplicable. The defendant in this case is Alvogen Malta Operations Ltd., while the defendant in the Hysingla litigation was Alvogen Pine Brook LLC. Based on information provided in the supplemental briefs, it appears that Alvogen Pine Brook LLC and Alvogen Malta Operations Ltd. were previously sister corporations, and at some time between 2016 and 2018, Alvogen Malta became the parent of Alvogen Pine Brook. Pernix argues that the separate nature of the corporate entities is "inconsequential" because Alvogen Pine Brook is listed as the agent of Alvogen Malta in the FDA submissions that underlie this litigation. In light of the Court's decision to preclude Pernix from introducing the expert reports from the Hysingla litigation as substantive evidence in this case, it is not necessary for the Court to resolve the question regarding whether the separate corporate status of the two Alvogen entities defeats Pernix's argument under Rule 801(d)(2).

refers to a statement that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."

There is substantial case law dealing with the admissibility under Rule 801(d)(2) of the testimony, depositions, or reports of an expert against the party that retained the expert. The case law on this subject is mixed, however, with courts reaching different results under a variety of different factual circumstances.

**1. Admissibility Under Rules 801(d)(2)(C) and (D)**

The leading Third Circuit case in this area, Kirk v. Raymark Industries, Inc., 61 F.3d 147 (3d Cir. 1995), held that testimony from a previous, unrelated trial by an expert retained by a party was not admissible under Rule 801(d)(2)(C). The court based its ruling on its analysis of the role of expert witnesses in general. It stated:

> In theory, despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. Thus, one can call an expert witness even if one disagrees with the testimony of the expert. Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony. Since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent. . . .
> Because an expert witness is charged with the duty of giving his or her expert opinion regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party.

Id. at 164 (citations omitted). Although the court in Kirk specifically addressed only Rule 801(d)(2)(C), which deals with statements by a person authorized to make a statement on behalf of a party, the court predicated its ruling on a finding that the expert in that case was not an "agent" of the defendant. In light of that language, Kirk has been interpreted as applying equally to Rule

801(d)(2)(D), which deals with statements by a party's agent on a matter within the scope of the relationship and while it existed.

A number of cases have followed Kirk in applying Rules 801(d)(2)(C) and (D), including several from this district. See, e.g., AVM Techs., LLC v. Intel Corp., Civil Action No. 15-33, 2017 WL 1753999, at *2 (D. Del. May 1, 2017) ("If AVM does not call [Intel's expert witness], and if Intel does not call her, her report is inadmissible hearsay that does not fall within one of the exceptions to the hearsay rule."); In re Air Crash Near Rio Grande Puerto Rico, Case No. 11-md-02246, 2016 WL 6916599, at *2 (S.D. Fla. Jan. 21, 2016) (plaintiffs did not "have the necessary control over the retained experts to establish an agency relationship"); Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc., No. 11-cv-6201, 2015 WL 539489, at *10 (S.D.N.Y. Feb. 10, 2015) (findings of experts retained by plaintiff not admissible because "there has been no showing that FHFA's reunderwriting experts were agents of FHFA authorized to speak on its behalf"); N5 Techs. LLC v. Capital One N.A., 56 F. Supp. 3d 755, 765 (E.D. Va. 2014) (defendants' expert's report in same case not admissible under Rule 801(d)(2)(C) or (D) because the expert "is not defendants' agent or employee, nor did defendants specifically authorize [the expert] to make any statement" on the subject matter in dispute); In re Refco Inc. Sec. Litig., Nos. 07-md-1902 et al., 2013 WL 12191891, at *10 (S.D.N.Y. Mar. 11, 2013) ("The agency rationale [of Rule 801(d)(2)(C)] is dubious because experts cannot comfortably be called agents of the party who retained them."); SanDisk Corp. v. Kingston Tech. Co., 863 F. Supp. 2d 815, 818–19 (W.D. Wis. 2012) (because expert's testimony was given in a separate case and "never proffered . . . in this case, it is neither reasonable nor fair to find that SanDisk authorized Reed's deposition testimony so that it can be deemed a party admission and used against SanDisk"); Durham v. County of Maui, 804 F. Supp. 2d 1068, 1071 (D. Haw. 2011) ("[I]t is only when the party presents the expert

at trial that the court may 'assume that those experts who have not been withdrawn are those whose testimony reflects the position of the party who retains them."); Lizotte v. Praxair, Inc., 640 F. Supp. 2d 1335, 1338–39 (W.D. Wash. 2009) (only expert testimony "sworn at trial or a deposition" is admissible under Rule 801(d)(2); "retention without testimony is not enough"); Pfizer, Inc. v. Ranbaxy Labs., Ltd., No. Civ. A 03-209, 2005 WL 2296613, *1 (D. Del. Sept. 20, 2005) ("[A]n expert witness cannot be viewed as a party's agent, because he or she is supposed to testify impartially in the sphere of his or her expertise.").[2]

While, as indicated, there are numerous authorities holding that out-of-court statements in the form of expert testimony, expert depositions, and expert reports are not admissible under Rule 801(d)(2)(C) or (D), there are also many cases holding to the contrary. The leading cases holding that an expert's prior testimony, deposition, or report is admissible as non-hearsay under Rule 801(d)(2)(C) are Collins v. Wayne Corp., 621 F.2d 777 (5th Cir. 1980), and In re Hanford Nuclear Reservation Litigation, 534 F.3d 986 (9th Cir. 2008). In Collins, a products liability action brought

---

[2] Although in theory expert witnesses are independent actors and not agents of the party that retained them, the Court recognizes that in reality expert witnesses are typically aligned with the retaining party, at least by the time the retaining party presents the expert's views during pretrial and trial proceedings. As was well stated by Chancellor Chandler of the Delaware Court of Chancery in Onti, Inc. v. Integra Bank, No. Civ. A. 14514, 1998 WL 671263, at *2 (Del. Ch. Aug. 25, 1998):

> [I]t seems intellectually dishonest for a court to fail to recognize that experts are more often than not hired hands, brought in by a party in order to propose the truth as that party sees it, or authorized by that party to represent the experts' own opinions as they conform to the party's position. While in theory an expert is meant to testify impartially as to his opinion, the fact that a party has control over whether or not to introduce the expert and testimony supported by him, and the fact that the party has the right to choose the expert in the first place, certainly adds credence to the theory that an agency relationship exists between the expert and his supporting party. Given that dynamic, it is unclear why a statement made by an expert in the course of his testifying on behalf of a party, which is adverse to that party, should not be admissible against that party.

See also Teva Pharm. USA, Inc. v. Abbott Labs., Civil Nos. 02-1512 et al., 2008 WL 4809116, at *1 (D. Del. Nov. 5, 2008).

5

against Wayne, a bus manufacturer, following a collision involving one of Wayne's buses, Wayne hired a Mr. Greene as "an expert in the field of automobile collision investigation" to analyze the accident. Mr. Greene was deposed and prepared a report. At trial, the plaintiff wished to use Mr. Greene's deposition testimony and argued it was admissible as a statement of a person authorized by Wayne to make a statement on the subject matter under Rule 801(d)(2)(C). The Fifth Circuit held that Mr. Greene's testimony was admissible on that ground, as Wayne had "hired Greene to investigate the bus accident and to report his conclusions. In giving his deposition he was performing the function that Wayne had employed him to perform. His deposition, therefore, was an admission of Wayne." Collins, 621 F.2d at 782.[3]

In the Hanford Nuclear Reservation case, the plaintiff had called an expert, F. Owen Hoffman, in an earlier bellwether trial, where he testified about causation. When the defendants sought to cross-examine Dr. Hoffman regarding his testimony on that subject at the earlier trial, the plaintiff objected. The Ninth Circuit held that "Dr. Hoffman's testimony at the first bellwether trial was an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(C). Plaintiff

---

[3] Cases involving expert witnesses who were retained for purpose of litigation have been distinguished from cases involving experts who were retained to investigate a matter and whose conclusions are adopted, expressly or implicitly, by the retaining party apart from litigation. The reports in the latter type of case have been admitted against the retaining party in subsequent litigation. See, e.g., Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998) (report prepared by an investigator for the defendant and relied upon by the defendant in taking action before the litigation held admissible); Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 870 (1st Cir. 1997) (same); Rodriguez v. City of Houston, Civil Action No. H-06-2650, 2009 WL 10679669, at *7, 11 (S.D. Tex. June 8, 2009) (city retained expert to prepare a report and accepted the report as "accurate and complete," rendering it a statement by a person authorized by the City to speak on the subjects covered in the report). The Fifth Circuit's decision in Collins has been distinguished on that ground, as the expert, although hired after the bus collision, conducted an investigation and prepared a report that the court did not describe as being prepared in connection with the subsequent litigation. See Kirk, 61 F.3d at 164 n.20; Koch v. Koch Indus., Inc., 37 F. Supp. 2d 1231, 1245 (D. Kan. 1998).

cannot now exclude trial testimony that she, herself, proffered." 534 F.3d at 1016 (citation omitted).

A number of district courts have followed those decisions in varying circumstances. Most of the cases that have held the evidence admissible have done so under Rule 801(d)(2)(C), finding that the expert was a person authorized to make a statement on the subject by the party that retained him, or under Rule 801(d)(2)(D), finding either expressly or by implication that that the expert was an agent or employee of the party that retained him. See North Star Mut. Life Ins. Co. v. CNH Am. LLC, Civil No. 11-4133, 2014 WL 897023, at *3 (D.S.D. Mar. 6, 2014) (out-of-court statement by expert retained by defendant, designated as its expert, and included on its witness list held admissible under Rule 801(d)(2)(C)); United States v. Ala. Power Co., 773 F. Supp. 2d 1250, 1257 n.10 (N.D. Ala. 2011) (testimony of plaintiff's expert in an earlier case held admissible under Rules 801(d)(2)(C) and 801(d)(2)(D) as non-hearsay against plaintiff, who employed the same expert witness to testify on the same subject matter in the case at bar); Abstrax, Inc. v. Dell, Inc., Civil Action No. 2:07-cv-221, 2009 WL 10677355, at *1 (E.D. Tex. Oct. 9, 2009) ("[T]he statements made by Dell's expert in the Lucent litigation are not hearsay. They are admissions.); Marceau v. Int'l Bhd. of Elec. Workers, 618 F. Supp. 2d 1127, 1142-43 (D. Ariz. 2009) (expert report admissible under Rule 801(d)(2)(C) because corporate defendants "specifically authorized [third party] to investigate the subject matter of the Report and then issue the Report"); Bianco v. Hultsteg AB, No. 05 C 0538, 2009 WL 347002, at *12 (N.D. Ill. Feb. 5, 2009) (expert's deposition testimony in same case is non-hearsay under Rule 801(d)(2)); Samaritan Health Ctr. v. Simplicity Health Care Plan, 459 F. Supp. 2d 786, 799 (E.D. Wis. 2006) ("[B]ecause First Health proffers its opponent's expert report against that opponent, the report can be considered an admission by a party-opponent."); Dean v. Watson, No. 93 C 1846, 1996 WL 88861, at *5 (N.D. Ill. Feb. 28,

1996) (statement by the expert was admissible because the expert was authorized by the defendant to make a statement concerning the subject in dispute); In re Chicago Flood Litig., No. 93 C 1214, 1995 WL 437501, at *11 (N.D. Ill. July 21, 1995) (a party's expert reports "often constitute party admissions pursuant to Fed. R. Evid. 801(d)(2)"); Long v. Fairbank Farms, Inc., Nos. 1:09-cv-592, 2:10-cv-60, 2011 WL 2516378, at *10 (D. Me. May 31, 2011) (statements of defendant's expert admissible under Rule 801(d)(2)(C) because defendant "expected him to testify impartially within the sphere of his expertise as to his independently formed opinions. . . . Therefore he was authorized by [the defendant] to make a statement concerning the subject matter about which he testified . . . ."); Glendale Fed. Bank v. United States, 39 Fed. Cl. 422, 424–25 (1997) (expert is "not the sponsoring party's agent at any time merely because he is retained as its expert witness," but as of the beginning of trial, prior statements of the expert who has not been withdrawn as a witness are admissible as authorized by the sponsoring party).

The most important case for present purposes is the Third Circuit's decision in Kirk. Because the issue of the admissibility of experts' reports as non-hearsay party admissions is an issue that is not unique to patent law, Third Circuit law—not Federal Circuit law—governs the inquiry. See Info-Hold, Inc. v. Muzak LLC, 783 F.3d 1365, 1371 (Fed. Cir. 2015) (regional circuit law governs standard of review applicable to evidentiary rulings); SSL Servs., LLC v. Citrix Sys., Inc., 769 F.3d 1073, 1082 (Fed. Cir. 2014) (merits of evidentiary rulings in patent cases reviewed under regional circuit law). As the authoritative Third Circuit precedent on the admissibility of expert reports under Rule 801(d)(2)(C), the Kirk case is binding on this Court.

As noted, although Kirk by its terms is limited to Rule 801(d)(2)(C), the rationale underlying the decision is clearly broad enough to require that the same analysis apply to Rule 801(d)(2)(D). The case specifically holds that a retained expert is not an agent of the party that

8

retained him, and the language of the opinion is broad: "We are unwilling to adopt the proposition that the testimony of an expert witness who is called to testify on behalf of a party in one case can later be used against that same party in unrelated litigation, unless there is a finding that the expert witness is an agent of the party and is authorized to speak on behalf of that party." Kirk, 61 F.3d at 164. The statement in Kirk that "normally" an expert witness "has not agreed to be subject to the client's control in giving his or her testimony," id., clearly applies to statements offered under either the "authorized statement" subsection (C), or the "agent or employee" subsection (D) of Rule 801(d)(2).

Therefore, under the analysis employed by the Third Circuit in Kirk, this Court concludes that neither Dr. Muzzio nor Dr. Mayersohn is (or was at the time they prepared their reports in the Hysingla litigation) an "agent or employee" of Alvogen. Although Alvogen has retained them, their role is to serve as independent experts, and there is no evidentiary basis from which to conclude that either of them is an agent or employee of Alvogen, such that any statement made by the experts within the scope of their employment or agency should be attributable to the principal, Alvogen. The Court regards the Kirk case as dispositive in holding that experts in a case such as this one will ordinarily not be deemed to be agents or employees of the party that retained them, and ordinarily will not be deemed authorized to make statements on behalf of the party that retained them as to the subject matter of their testimony. The Court therefore rejects Pernix's argument that the Muzzio and Mayersohn reports from the Hysingla litigation are admissible in this case as substantive evidence under Rules 801(d)(2)(C) or 801(d)(2)(D).[4]

---

[4] Of course, if facts are developed that suggest that, contrary to the ordinary situation contemplated by the court in Kirk, Drs. Muzzio or Mayersohn should be regarded as agents of Alvogen or authorized to speak on behalf of Alvogen, the Court would be prepared to revisit the admissibility of their reports under Rules 801(d)(2)(C) or (D).

### 2. Admissibility Under Rule 801(d)(2)(B)

A more difficult question is whether the statements by Drs. Muzzio and Mayersohn are admissible under Rule 801(d)(2)(B), which applies to "adoptive admissions," i.e., statements that the party manifested that it adopted or believed to be true. The issue with respect to Rule 801(d)(2)(B) is whether the party has taken any action that indicates that it has adopted some or all of the statements in the experts' reports.

A number of cases have addressed the issue of the admissibility under Rule 801(d)(2)(B) of prior statements by experts, such as testimony or reports filed in other cases on behalf of the party against which they are offered. The Kirk decision does not address that issue, and cases applying Rule 801(d)(2)(B) have admitted the experts' statements under various factual scenarios indicative of the party's adoption of the expert's statements. See Auto-Dril, Inc. v. Nat'l Oilwell Varco, LP, Civil Action No. H-16-280, H-16-293, 2018 WL 1740074, at *7 (S.D. Tex. April 11, 2018) (report of expert retained by one of the defendants was admissible because expert adopted his declaration from the previous litigation as his direct testimony when he was deposed, and defendant did not object); Betz v. Highlands Fuel Delivery, LLC, No. 5:10-cv-102, 2013 WL 392480, at *7 (D. Vt. Jan. 31, 2013) (party may use the report of an opponent's expert as substantive evidence); Abstrax, 2009 WL 10677355, at *1 (statements by Dell's expert in other litigation were "statements of which Dell has manifested an adoption or belief in their truth"); Rodriguez v. LaFarge Sw., Inc., Civil No. 06-1076, 2009 WL 4279850, at *2, 4 n.3 (D.N.M. Feb. 3, 2009) (plaintiffs expressly adopted expert's opinions in his written report; their designation of him constitutes adoption of or acquiescence in his opinions); Samaritan Health Ctr., 459 F. Supp. 2d at 799 ("by virtue of the party's proffering of the expert's opinion as part of its case," expert's opinion is "a statement of which the party has manifested an adoption or belief in its truth"); Buckley v. Airshield Corp., 116

F. Supp. 2d 658, 663–64 (D. Md. 2000) (plaintiff's affidavit and other material from litigation in which the parties were co-plaintiffs were adoptive admissions against the defendants in subsequent litigation); Kreppel v. Guttman Breast Diagnosis Inst., No. 95 Civ 10830, 1999 WL 1243891, at *1 (S.D.N.Y. Dec. 21, 1999) (report prepared by expert in connection with the case admissible where expert was later deposed and listed as a trial witness in the joint pre-trial order; report was held admissible under Rule 801(d)(2)(B) as an adoptive admission; defendant's retention of expert as its trial expert, "particularly in the face of her Rule 26(a)(2)(B) report, which is the required statement of the opinions that she would offer at trial, cannot reasonably be viewed as anything but adoption of or acquiescence in those opinions").  But see Kirksey v. Schindler Elevator Corp., Civil Action No. 15-0115, 2016 WL 7116223, at *15–17 & n.23 (S.D. Ala. Dec. 6, 2016) (expert retained by defendant in another case prepared a report; court rejected the plaintiff's argument, based on Rules 801(d)(2)(B) and 801(d)(2)(C), that the defendant's acts of hiring the expert in the earlier case, disclosing his opinions in that case, and making him available for deposition in that case meant that the defendant adopted or believed his statements to be true; "a party does not, by the simple act of designating an expert witness, automatically and irrevocably adopt everything that witness may say in the case").

      The rationale underlying Rule 801(d)(2)(B) results in a much more restrictive scope for adoptive admissions than, for example, for admissions based on the agency of Rule 801(d)(2)(C). A statement is admissible as an adoptive admission only if the party against whom the statement is offered has specifically adopted that statement as its own.  Thus, in the case of expert witnesses, admissibility under Rule 801(d)(2)(B) depends on a finding that the party has specifically adopted each statement at issue made by the expert, rather than treating as admissible any statement made by the witness within the scope of his agency.  The rule that the Court derives from the cases

11

construing Rule 801(d)(2)(B), as applied to statements of a party's expert witness that are offered as adoptive admissions of the retaining party, is this: The expert's statements, whether in the form of a deposition, an expert report, or testimony in another proceeding, will be regarded as an adoptive admission and thus not hearsay as to the retaining party if the circumstances in which the statement is made, used, or proposed to be used indicate that the party supports the statement as representing its position. For example, if the party has called the expert as a witness, in the same or another proceeding, to prove a particular fact and the witness has so testified, the party will be held to have adopted the expert's testimony on that point as an admission. See Fox v. Taylor Diving & Salvage Co., 694 F.2d 1349, 1355–56 (5th Cir. 1983).

The approach suggested by the McCormick treatise on evidence is a balanced one that rationalizes the approach suggested by most of the cases that have addressed varying fact patterns regarding the admissibility of expert witness statements under Rule 801(d)(2)(B). As McCormick explains, "circumstances may justify the conclusion that, when the proponent placed the witness on the stand to prove a particular fact and the witness so testified, the party has created an adoptive admission of the fact that may be admitted in a later suit. . . . [I]t would seem that a practical working rule would admit against the proponent the direct testimony of its own witness as presumptively elicited to prove the facts stated, in the absence of counter proof that the testimony came as a surprise to the interrogator or was repudiated in the course of argument." 2 Kenneth S. Broun, McCormick on Evidence § 261, at 303–04 (7th ed. 2013). On the other hand, McCormick adds that "[i]n general, the opinion of an expert who was not called as a witness should not constitute an admission of the party that sought the opinion." Id. at 303 n.12.

In this case, Alvogen submitted the reports of Drs. Muzzio and Mayersohn in the Hysingla litigation and included them on its list of witnesses in the joint pre-trial order. See Pharma L.P. et

12

al. v. Alvogen Pine Brook LLC, Civil Action No. 15-687, Dkt. No. 357-5 (D. Del. Apr. 12, 2018). Because of the settlement of that litigation, they did not testify in the Hysingla case. As a result, it is not clear to the Court what portions of their expert reports would have become the subject matter of their trial testimony. The joint pretrial order, which provides a brief summary of the proposed witness testimony for each party's witnesses, does not provide sufficient detail for the Court to conclude that particular parts of the Muzzio and Mayersohn expert reports would have been replicated in their trial testimony. See id. at 13–14, 16–17.

The burden is on Pernix to lay a foundation for the admission of the Muzzio and Mayersohn expert reports by laying a foundation to show that the statements that it wishes to introduce are non-hearsay under Rule 801(d)(2)(B). Lippay v. Christos, 996 F.2d 1490, 1497 (3d Cir. 1993); see also Tober v. Graco Children's Prods., Inc., 431 F.3d 572, 576 (7th Cir. 2005); Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 870 (1st Cir. 1997); Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1566 (11th Cir. 1991). Pernix argues that Alvogen adopted the statements of Drs. Muzzio and Mayersohn by designating them as experts, serving reports from them, making them available for deposition,[5] and designating them as trial witnesses. Dkt. No. 233, at 2–3. None of these actions are enough, however, to show that Alvogen adopted any specific statement contained in the expert reports. See Kirksey, 2016 WL 7116223, at *16 ("It is common sense that a litigant does not manifest that it adopted or believed to be true a witness's statements simply by designating that individual as a witness, where the litigant was unaware of those specific statements at the time of such designation."). The Court therefore concludes that the

---

[5] Federal Rule of Civil Procedure 32 provides an avenue to admit deposition testimony that would otherwise be hearsay where, inter alia, the party against which it is used was present or represented at the taking of the deposition. See Novozymes A/S v. Genencor Int'l, Inc., No. CIV.A. 05-160, 2006 WL 318936, at *1 (D. Del. Feb. 10, 2006). However, Pernix does not seek to admit deposition testimony from either expert.

mere fact that Drs. Muzzio and Mayersohn prepared expert reports stating their views on various matters relating to the Hysingla litigation is not sufficient, without more, to justify the Court in finding that the full text of the expert reports should be regarded as adoptive admissions of Alvogen under the authority of Rule 801(d)(2)(B).

### B. The Impeachment of Dr. Mayersohn with Dr. Muzzio's Report

Pernix additionally submits that it should be allowed to use statements from Dr. Muzzio's report in the Hysingla litigation during its cross-examination of Alvogen's witnesses, including Dr. Mayersohn.

Pernix's position is contrary to the principle that, if statements by a declarant are inadmissible as hearsay, those statements cannot be used to cross-examine a different witness at trial. See United States v. Hassan, 552 F. App'x 527, 532 (6th Cir. 2014) (improper to impeach a witness with a portion of another person's out-of-court statement if that statement was inadmissible as hearsay); Garcia-Martinez v. City and County of Denver, 392 F.3d 1187, 1194 (10th Cir. 2004) (statements made by others "are not admissible as prior inconsistent statements" of the witness); Bemis v. Edwards, 45 F.3d 1369, 1372 (9th Cir. 1995) ("[A] 'prior statement by a witness' offered to show inconsistency with testimony at trial is not hearsay. However, this rule only applies to prior inconsistent statements of testifying witnesses. Whereas an inconsistent statement by a testifying witness can be used to impeach that witness's credibility, an inconsistent account by another source is offered to show an alternative view of the truth" and is thus inadmissible if not otherwise admissible over a hearsay objection. (citations omitted)); Tucci v. Dixon, No. 3:cv-01-2337, 2005 WL 2335333, at *5 (M.D. Pa. Sept. 23, 2005) ("As a general rule, an '[impeaching] statement must be that of the witness to be impeached and not of some other person.'" (alteration in original) (quoting Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, 262 F.

Supp. 2d 251, 262 (S.D.N.Y. 2003))); 30B Charles Alan Wright et al., Federal Practice and Procedure § 6728, at 109 (2017) ("An effort to impeach a witness with an out-of-court statement made by another person necessarily relies on the truth of the out-of-court statement and, consequently, requires a hearsay exception for admission.").

Perhaps the best statement of this rule was provided by the Ninth Circuit in United States v. Bao, 189 F.3d 860 (9th Cir. 1999). That statement is sufficiently definitive on the point that it deserves to be quoted in full:

> A prior inconsistent statement is admissible to raise the suggestion that if a witness makes inconsistent statements, then his entire testimony may not be credible; such an inference does not depend on whether either the prior statement or the subsequent in-court statement is true. Therefore, because a declarant's prior inconsistent statement is not offered for its truth, it is not hearsay.
> It is an entirely different matter to offer one declarant's statement to impeach the credibility of another witness. Merely offering a contradictory account offered by one witness does not go to another witness's credibility unless the first witness's account is offered as true. Only the declarant of the prior inconsistent statement, and not another witness, may be impeached with the statement.

Id. at 866 (citations omitted).

As Alvogen points out in its supplemental brief, that principle applies equally to expert witnesses. Thus, a party is not allowed to impeach an opposing party's expert witness with hearsay statements from another expert witness (unless the party can show that the witness relied on those statements in forming his opinion). See Ochoa-Valenzuela v. Ford Motor Co., 685 F. App'x 551, 554 (9th Cir. 2017) (error to permit an expert witness to be cross-examined about an opinion given by his business partner in deposition in a different case; absent reliance by the expert on the out-of-court statement to form his opinion, "the use of testimony from another expert who did not testify in this trial constitutes admission of inadmissible hearsay"); In re Hanford Nuclear Reservation Litig., 534 F.3d at 1012 ("[R]eports of other experts cannot be admitted even as impeachment

evidence unless the testifying expert based his opinion on the hearsay in the examined report or testified directly from the report.").

Pernix does not cite or discuss any of this authority. Instead, Pernix cites three cases for the proposition that the Muzzio report from the Hysingla litigation can be used to impeach Alvogen's expert witnesses. The cases cited by Pernix, however, do not even remotely support that position. Indeed, Pernix's cases do not address the hearsay problem at all. Two of Pernix's cases do not involve the introduction of out-of-court statements, and the third involves the use of a document for what is plainly a non-hearsay purpose.

First, citing Simmons, Inc. v. Pinkerton's, Inc., 762 F.2d 591 (7th Cir. 1985), Pernix argues that the use Dr. Muzzio's report is permissible under a theory of impeachment by contradiction. Under that theory, Pernix argues, Dr. Muzzio's report may be used because that evidence "involves presenting evidence that part or all of a witness' testimony is incorrect." Id. at 604. Simmons, however, did not involve extrinsic evidence, but only a line of cross-examination that related to whether the witness had been untruthful in the past, which would cast doubt on his veracity. See id. at 605. The court held the line of questioning to be permissible under Federal Rule of Evidence 608(b), which permits cross-examination into specific instances of a witness's conduct that shed light on that witness's credibility, but prohibits the introduction of extrinsic evidence for that purpose. Nothing in Simmons permits impeachment by contradiction by use of a third party's hearsay statement.

Second, Pernix cites Morgan v. Covington Township, 648 F.3d 172 (3d Cir. 2011), in which the plaintiff sought to call two witnesses at trial to testify that certain aspects of the testimony of two defense witnesses were untrue. The district court prohibited the plaintiff from calling the witnesses, but the court of appeals reversed. In response to the argument that the

evidence was barred by Federal Rule of Evidence 608(b), the court stated that the district court had "overlook[ed] the crucial fact that [plaintiff] sought to contradict specific testimony offered under oath, rather than simply to suggest that [the defense witnesses] had engaged in dishonest behavior on some occasion. In other words, [plaintiff] sought to engage in 'impeachment by contradiction,' which is not covered by Fed. R. Evid. 608." Id. at 179. That case, too, provides no support for Pernix's position. While Morgan permits impeachment by contradiction by live witness, nothing in that opinion condones the use of extrinsic hearsay evidence to contradict a witness at trial.

Finally, Pernix cites a passage from the district court opinion in Matthiews v. Crosby Tugs, LLC, No. CV 15-5985, 2016 WL 7048255 (E.D. La. Dec. 5, 2016). In that case, the plaintiff testified in his deposition that he had provided a written description of his accident to a claims adjuster. At trial, the defendant sought to introduce documents from the adjuster that would show that the adjuster's file on the incident did not contain a written statement from that witness. The court permitted the use of the documents. The documents were relevant, the court held, because the absence of any record of the accident in the adjuster's file tended to show that the plaintiff did not in fact provide a written description of the accident to the adjuster. The documents were not objectionable on hearsay grounds, the court held, "because the documents are not offered for the truth of any assertion contained in the documents." Id. at *1.

Pernix's reliance on Matthiews is far wide of the mark. To begin with, although the district court in Matthiews made clear that the adjuster's documents were not being used to prove the truth of any assertion found in them—and thus the documents were not offered for a hearsay purpose—Pernix cites the case for the proposition that "extrinsic evidence can be used to impeach a witness by contradiction even if it contains hearsay." Dkt. No. 233, at 6. Beyond that, there is no equivalence between the evidence in Matthiews and the evidence at issue in this case. While the

17

evidence in Matthiews was relevant without regard to the truth of anything stated in the adjuster's documents, the statements in Dr. Muzzio's expert reports would be relevant only if the statements in those reports were taken as true. That is, they would they serve the purpose of contradiction for which they are being offered only if they were taken as true. If not for their hearsay use, the reports would be irrelevant. Thus, the reports at issue are clearly being offered for a hearsay purpose and are inadmissible.

The Court therefore rules that Dr. Muzzio's statements cannot be used, either as substantive evidence or for impeachment of other witnesses at trial.

**C. Conclusion**

Based on the supplemental briefing in which the Court gave Pernix the opportunity make the showing necessary to satisfy its burden to show that the Muzzio and Mayersohn expert reports from the Hysingla litigation are admissible over a hearsay objection or can be used for impeachment purposes at trial, the Court concludes that those reports are not admissible or usable for impeachment. Accordingly, the five exhibits at issue—PTX 84, 85, 89, 133, and 134—will not be admitted at trial. Dr. Mayersohn's report may be used to impeach Dr. Mayersohn to the extent that his testimony at trial is inconsistent with his prior statements.

IT IS SO ORDERED.

SIGNED this 8th day of June, 2018.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE